It's not a qualifying offense under the federal statute to raise his statutory level from 0 to 10 to 10 to 20 years incarceration in this case. And it comes down to the statute's requirement that in order for a state offense to qualify for such a statutory enhancement, it has to either be aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward. Our submission is that this case, that Ohio's GSI statute, is most akin to the third prong, which is abusive sexual conduct. The way we get to that is that we take a look at the rest of the statute that's in question here. And the statute talks about federal offenses that also qualify for this enhancement to double the statutory minimum and maximum sentences. And one of the first qualifiers is, of course, the statute itself. So if there's a prior conviction for this actual offense, then that qualifies. But the second one that's listed is the Chapter 109A offenses, which are the federal convictions for aggravated sexual abuse, sexual abuse, and abusive sexual contact. The only difference between the federal statute's listing and the state statute's listing is the word conduct versus contact. And first, I would submit that if Congress had been a little bit more careful and transcribed it a little bit better and it would have said contact instead of conduct, then we wouldn't even be here today because it's so obvious that Congress was intending for the state statutes to be analogous to the federal statutes in this case. What's your best case on your behalf? Best case on my behalf is we submit as Yates v. United States. We cited that in our reply brief because it wasn't available at the time that we filed our initial brief. But that goes into a great statutory construction of how you take a look at words in a statute and they don't necessarily mean what they mean out in the real world, right? That doesn't involve this statute, though, does it? It doesn't involve this statute, but the analysis is right on point because in that case, the Supreme Court said that a fish is not a tangible object. And the reason that they got to a fish is not a tangible object is that they said that it's sometimes improper to just take the common sense meaning of a word within a statute, take it out of the context of the statute itself, and then try to define it, even where Congress doesn't provide us with a definition of that particular word or that phrase. Mr. Shedd, go ahead. I was going to say the prosecution says that most of the circuits in the country are against you. Do you agree with that? No. Well, the Second Circuit, the Ninth Circuit is the case that is relied upon by the government, and that's the Cenarius case. There's a couple of different problems with the Cenarius case. One is that the Ninth Circuit doesn't do what our circuit does in that we have already said that when we're looking at sexual abuse, aggravated sexual abuse, and abusive sexual conduct, that we use a Taylor-Shepard analysis, that despite the fact that there's this phrase relating to that we don't make it bigger than it is and we use a Taylor-Shepard analysis. The Ninth Circuit actually in Cenarius used related to and said, well, it's a more wide spectrum than just a Taylor-Shepard analysis, and therefore we can get there. The second problem with the Cenarius case is that they did exactly what the district court did in this case and the government argues in this case, which is that they just took the phrases, took them completely out of the context and put the common sense, everyday language to them. And it creates a problem because what they don't do is they don't define the third phrase, which is abusive sexual conduct. And that's where we get into a problem with this case because sexual is in all three. Abuse is in the first two, but abusive is in the third. So if we're going to use the word, if we're going to define sexual and we're going to define the word abuse, then we've got a problem because all three of those phrases fit all three of those prongs. I understand, Mr. Shedd, it's not in your interest to endorse the reasoning of Cenarius, but it is true. I mean, when you say, oh, well, there's just Cenarius on which the government relies, it's true that a number of other circuits do appear to have endorsed the Cenarius reasoning, right? Absolutely. And that would include the second, the eleventh, and the fourth. Absolutely. And the seventh, I believe, has gone the other way. They've gone with an argument similar to what I'm arguing today. And that argument just boiled down to it, to its essence. And I find these cases to be like a puzzle, and if you don't figure out where it is you're going, you'll be lost. Where we're going is figuring out, in terms of your articulation of the argument, is whether the 2242 meaning applies or whether an ordinary, more generic meaning. That's where we're going, right? That is correct. Before we get to Ohio's GSI statute, we have to determine what aggravated sexual abuse, sexual abuse, and abusive sexual conduct. So you and the government agree on how the question ought to be defined. You just disagree about which alternative this court should pick. Absolutely. So when you strip it down there, the case looks somewhat more approachable. Yes. At least it does to me. Sure. And that's why I led with the Yates, why I think Yates is most important in this case, because it does come down to, we know that we have to define all three of these problems. We know that the statute does not define any of them for us, this particular statute, the 2252 statute. So now we are left with either the common sense, Webster approach to defining these words, and not together, but what Cenarius says and what the government says is you define them independently of each other, then mush them back together and then stick it into the statute. And Yates, the government actually argued the same exact thing in Yates. It was the same exact argument. They said you take tangible, you take object, you give them their Webster definition meanings, of course a fish fits under this scenario. And the Supreme Court in Yates said you can't do that in a vacuum. You have to look at the scope of the statute. And so in this case, what is our statute about, right? Our statute is about enhancing a defendant's sentence based upon prior convictions for the sexual abuse kind of conduct. And I provided the court in my opening brief with the actual history of how this developed within the statute, because at first, when the statute was first developed, it was just prior offenses of the same kind, of 2252 offenses. Then in, I believe it was 1994, they added 109A offenses, and in 1997, they added the state prong. I guess Yates is of more theoretical usefulness than actual usefulness, because it's a long way from whether a fish is an intangible object to what we're dealing with here, right? No, because in Yates, if we were going to take the government's exact analysis in this case, and we were going to say take a Webster definition of tangible and then take a Webster definition of object, put them together, and then say, now we have a fish, does it fit this definition? No one in this room would say that it doesn't fit that definition, right? But the Supreme Court has said you don't do that in every statutory construction case. And as a matter of fact, what you have to remember is one of the rules is that, you know, words in a statute are known by the company that they keep. Well, the company that is kept with regards to abusive sexual conduct, sexual abuse, and aggravated sexual abuse is 109A. Let's kind of take it from the other side of this, which is that Congress never intended to analogize to 109A at all, right? That when they amended the statute for the second time in 1997, what they meant was what the government is arguing, which is this, that there was this common law sexual abuse that was out there, and that's really what we're analogizing to. Well, the problem with that is that aggravated sexual abuse, sexual abuse, and abusive sexual conduct don't have any common law analogies to them. The government cited to, I believe, there were four state statutes which had sexual abuse, but the government didn't cite to any of aggravated sexual abuse or abusive sexual conduct because they're not out there. In addition, if you take a look at those state statutes that they cited to, they capture conduct which is varied within those four states. So there is no common law aggravated sexual abuse, sexual abuse, and abusive sexual conduct. It just isn't out there. So could Congress have been pointing to something that just isn't out there? It's far more likely that when Congress used almost verbatim the same language that they already had in another statute, a federal statute, that they were actually referring and they wanted to go with that federal statute, and that's where I believe the term relates to comes in. The basis for that, though, is that it's just a guess on our part. Either one's a guess on our part, right? And so if either one's a guess on our part, tie goes to the defendant. That's the rule of lenity. I see that my time is up. If there are no further questions, I'd leave the balance of my time. Thank you. May it please the Court, Ben Glassman on behalf of the United States. Let me make a couple of points and try to clarify the government's argument. It's not exactly, I think, the way my colleague put it in all the details, but when we're trying to understand the meaning of undefined words in a statute, and we all agree that these words are undefined in Section 2252b-2, notwithstanding that there is a definition section for that chapter, 2256, which defines other words, but not these. These are clearly undefined. The general rule is that absent some other countervailing indicia of meaning, words mean their regular, ordinary meaning. That's the rule that the district court followed here. It's the rule that applies across the board and that we rely on, that the Ninth Circuit relied on. The Second Circuit, Fourth, Fifth, Eighth, I believe, have all followed the same approach in defining these words. So we're just trying to figure out what is the ordinary, common meaning of sexual abuse, those words, unless there are some other indications of meaning in this statute that counterman that instruction. Now, I want to clarify one point. The rule asks us to figure out what's the ordinary meaning of the words. It does not ask us to figure out if there's a common law crime. Those are two different things, and the rule asks what is the generic meaning of the words, not a common law crime, to clarify that point. What was the offense under Ohio law that the defendant had pleaded guilty to before? Gross sexual imposition, which is Ohio's basic sexual assault statute. So, please. I should have looked at the criminal code before, in my preparation for this case, but I didn't. Tell us just briefly, I'm sure that I've known at some point in preparation, tell us briefly where, I mean, obviously 2242 is somewhat nearby, but tell us what statute it's a part of and what that statute addresses. Sure. 2242 is nearby, but it's actually in a different chapter. Well, I knew that, so what is it? And that is about actual sexual offenses that fall within federal jurisdictions. Okay. It's the federal, rather than a statute that is referencing state convictions and the penalty provision. That's correct, although I'm actually going to draw them together real briefly, because one of the points that we made in trying to refute the contention of my colleague that there was a secret cross-reference to these statutes definitionally in 2252 was we said, you know, look, when Congress wants to define state analogs in a way that matches up identically with federal ones, it knows how to do that. It says in the statute, well, convictions that are for these federal crimes or for crimes under state law that amount to this federal crime if it would have been on federal jurisdiction. And we gave the example of 18 U.S. Code 2426 as one such example. The guidelines are another example. And in the reply brief, my colleague says, my colleague's response to that contention is to say, well, when 2252b2 was enacted, 2426 was enacted a year later, so Congress hadn't yet figured out how to make that cross-reference. That learning curve was too great for Congress at that point. It took another full year to figure that out. And that would be a novel argument. Well, Mr. Shadd is always a good advocate. It would be a novel argument, but on reflection, it's actually not true. And, in fact, even in this particular case, the irony here is look at 2241, which is he says that 2252 was secretly trying to incorporate the sexual act definitions for 2241, 42, and 43. If you look at 2241 itself, it has a recidivist sentencing enhancement for prior convictions under state law that would have been an offense under this section. So the very statute that he says is secretly trying to be incorporated itself shows exactly how to do what he says this statute was trying to do and what this statute does not do. Now let me make one other point. So is that evidence that Congress wasn't on a learning process? Yes. Yes. That's right, Judge Gibbons. It knew one year and it knew the next year. That's right. And they were enacted at the same time, the first two, the 41. The 41 was the statute that, according to my colleague's argument, was supposed to be incorporated by secret cross-reference by definition. So that very statute, which existed at that time, had exactly the cross-reference that he says should have been in this one. Now I wanted to also make the point, though, that 2252b2 does, as my colleague says, incorporate unquestionably all prior convictions under Chapter 109A. Well, Chapter 109A of the federal crimes doesn't just have 2241, 42, and 43. It also has 18 U.S. Code Section 2244, which is virtually identical to Ohio's gross sexual imposition statute. In other words, 2244 criminalizes all the same things as 2241, 42, and 43, but unlike those which require either penetrative sex or direct oral to genital contact, which is the part that my colleague would like to have incorporated as a requirement into state law, 2244 criminalizes all those same things with only sexual touching, which is what Ohio's gross sexual imposition statute does as well. And this court has already said in its prior in-bank opinion in this very case that there's no reason that Congress would want to treat similar federal crimes differently than similar state crimes. So I think that the fact that 2244 counts kind of cinches the point that Ohio's gross sexual imposition counts as well. Let me clean up one point. My colleague was talking about scenarios and saying that that court, the Ninth Circuit, was using some approach other than the categorical approach it relies on relating to. I believe that if the court looks at scenarios, that is incorrect, that the Ninth Circuit uses the same categorical approach as anybody else. And then that leaves the—my colleague focused a lot on Yates, and as Judge Gibbons pointed out, it's Yates' concern, 18 U.S. Code Section 1519, being a completely different statute under an act as part of the Sarbanes-Oxley Act. But I think that if you do take the analogy to Yates seriously, it cuts very strongly in the government's favor, because if you look at Justice Ginsburg's plurality opinion in Yates, it does begin with the same usual rule that we say applies here. To understand undefined words, you look at their ordinary meaning, unless there are other countervailing indicia of a contrary or narrow meaning. And what the plurality opinion goes through in Yates proceeds to consider five other statutory contextual considerations for 1519 that suggest to the plurality a narrower reading of tangible object than one that would include a fish. If you go through those five contextual considerations in that case, and I won't belabor the point here, but I'd invite the court to do it, not a single one of them is present in this case in a way that favors my colleague. Either they're completely not present, such as, for example, the title of the section, or they are present but in a way that favors the government, such as the fact that prior convictions under 109A, like 2244, are undoubtedly included and do count. So I think that the analogy of Yates just does not help Mateen at all. I know that there's a lot of moving parts in trying to understand the meaning of this statute, so I don't want to sit down before I invite any questions that the court may have regarding any aspect of this analysis. But if there are none, then the United States asks the court to affirm the district court's decision. Thank you. Thank you. If you accept the government's argument, then you have to do something with the third prompt, abusive sexual conduct. You have to define it in some way that makes it different than sexual abuse or aggravated sexual abuse. The government has not yet put forth anything to show what would be the difference between sexual abusive conduct and sexual abuse. And the reason that they can't is because they contain the same exact words, which it asks you to take out of its context, define, and then put back into the context. I was trying to think of a good analogy of this, of, you know, if you didn't know what fruit was and you had a plum and a grape, and the only thing that you knew was that it was purple and it was round. You might say, okay, it's a plum, but you need other information to show whether it's a plum or a grape, such as the size and different things like that. In this case, there has to be a difference. Congress meant, if nothing else, we know that Congress meant that there is a difference between a state offense involving aggravated sexual abuse, sexual abuse, and abusive sexual conduct. You can't find that Ohio's GSI statute falls in the middle one without saying why it doesn't fall in the third one, because that has to be defined in order for you to make a fair ruling in this case. And that's where the government's definition falls apart. In this case, and in going to Ohio's GSI statute, it captures conduct. I cited several state cases. It captures conduct which is far beyond what you would think of as a sexual assault. One of the first cases I cited to was where a gentleman put his hand under the bikini strap of the shoulder of a 17-year-old, and that was Ohio's GSI. Another defendant touched the breast, the male breast of a defendant. That was Ohio's GSI. If we're going to say that that is also sexual abuse, what's left for the third prong? It becomes completely superfluous, and we do know that the case law says that you don't read statutes to read out whole phrases or words in those statutes. Do you have any case that follows what you say? What you say is very interesting, but has any court ever stated this? Up till this court, no. This is the first court to do so. But we haven't done it yet. Unless there are any further questions. Thank you. Thank you. If I wouldn't, I'm sorry. This is out of turn, but I did file a 28-J on the Lockhart case, which the en banc court the last time up here decided on the three prongs and whether the minor or victim applies to the third three prongs. The Supreme Court is deciding that case. They're hearing arguments next month, and that would change the outcome of this case as well. Thank you. I'm sorry. You may call the next case.